134 Nev., Advance Opinion 91

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

TRACEY W. VICKERS,
Appellant,
vs.
JAMES E. DZURENDA, DIRECTOR,
NEVADA DEPARTMENT OF
CORRECTIONS; AND HAROLD
WICKHAM, WARDEN, WARM
SPRINGS CORRECTIONAL CENTER,
Respondents.

No. 72352-COA



FILED

NOV 21 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Pro se appeal from a district court order dismissing a postconviction petition for a writ of habeas corpus.[1] First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed.*

Tracey W. Vickers, Lovelock,
in Pro Se.

Adam Paul Laxalt, Attorney General, and Heather D. Procter, Senior Deputy Attorney General, Carson City,
for Respondents.

_____

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

_____

[1]This appeal has been submitted for decision without oral argument. NRAP 34(f)(3).

18-905209

*OPINION*

PER CURIAM:

In this opinion, we consider whether an offender who is willing and able to work but who has not been assigned a job by the Nevada Department of Corrections (NDOC) is entitled to labor credits pursuant to NRS 209.4465(2). We also consider whether the change in the ability to apply credits to minimum sentences brought about by the 2007 amendments to NRS 209.4465 violated the Equal Protection Clauses of the United States and Nevada Constitutions. For the reasons discussed below, we answer "no" to both questions.

*FACTS*

In February 2014, appellant Tracey W. Vickers struck his victim with a cane. He subsequently pleaded guilty to battery with the use of a deadly weapon, a category B felony. *See* NRS 200.481(2)(e)(1). He was sentenced to 48 to 120 months, which was suspended, and he was placed on probation for five years. Vickers' probation was revoked the following year. The district court imposed the original sentence and credited him with 134 days for time spent in presentence confinement, but it did not credit him with time spent on probation. Vickers admits he has not worked since he has been in NDOC's custody.

*ANALYSIS*

*Labor credits*

Vickers contends he is entitled to labor credits pursuant to NRS 209.4465(2) because he is ready and willing to work. He points out NDOC does not have enough jobs for all inmates who want to work. Vickers argues crediting offenders who want to work, but for whom NDOC does not have a job, furthers the legislative intent behind labor credits—promoting early

release and incentivizing inmates to remain trouble-free. Accordingly, Vickers argues, he is entitled to 10 days per month labor credit for each month he is willing and able to work, regardless of whether he actually works. Vickers presents a question of statutory interpretation.

The meaning of a statute is a question of law and is thus reviewed de novo. *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). A statute's plain meaning informs us of the Legislature's intent, and where the language is clear and unambiguous, we must give effect to the apparent intent. *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011).

The plain meaning of NRS 209.4465(2) belies Vickers' arguments. NRS 209.4465(2) grants NDOC's Director the discretion to "allow not more than 10 days of credit each month for an offender whose *diligence in labor* and study merits such credits." (Emphasis added.) "Diligence" is "a persevering *application.*" *Merriam-Webster's Collegiate Dictionary* 350 (11th ed. 2014) (emphasis added). Thus, to be diligent in labor one must actually apply oneself to the labor. The legislative intent is clear: Where an inmate has not engaged in any labor, he has not been diligent in labor, and accordingly, the Director has no discretion under NRS 209.4465(2) to award labor credits. The Department's administrative regulations are in accord with this intent. *See* NDOC AR 563.01(2)(A) (providing for verification to "ensure that inmates who are not assigned to work or study do not receive work credits"). Here, Vickers admits he has not worked. Therefore, he is not entitled to labor credits.

*Equal protection*

Vickers contends the failure to apply statutory good-time credits he earns pursuant to NRS 209.4465(1) to his parole eligibility

violates his right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 4, Section 21 of the Nevada Constitution. Vickers asserts offenders convicted of the same category of felony receive disparate treatment under NRS 209.4465 based upon the date they committed their offenses.

At the heart of the Equal Protection Clauses is the idea that all people similarly situated are entitled to equal protection of the law. *Gaines v. State*, 116 Nev. 359, 371, 998 P.2d 166, 173 (2000); *see Armijo v. State*, 111 Nev. 1303, 1304, 904 P.2d 1028, 1029 (1995) ("[T]he standard of the Equal Protection Clause of the Nevada Constitution [is] the same as the federal standard . . . ."). Thus, the threshold question is whether a statute treats similarly situated people disparately. *Rico v. Rodriguez*, 121 Nev. 695, 703, 120 P.3d 812, 817 (2005).

Between the adoption of NRS 209.4465 in 1997 and the effective date of its amendment in 2007, NRS 209.4465(7)(b) provided that credits earned pursuant to the statute "[a]ppl[ied] to eligibility for parole unless the offender was sentenced pursuant to a statute which specifie[d] a minimum sentence that must be served before a person becomes eligible for parole." 1997 Nev. Stat., ch. 641, § 4(7)(b), at 3175. The Nevada Supreme Court has considered whether, for offenders sentenced for crimes committed during this time period, "credits earned pursuant to NRS 209.4465 apply to eligibility for parole as provided in NRS 209.4465(7)(b) where the offender was sentenced pursuant to a statute that requires a minimum term of not less than a set number of years but does not mention parole eligibility." *Williams v. State*, 133 Nev. ___, ___, 402 P.3d 1260, 1261 (2017). It concluded they did. *Id.*

In 2007, NRS 209.4465 was amended to provide exceptions for how credits earned under the statute were to be applied. NRS 209.4465(8) was added, providing that offenders who had not committed felonies involving the use or threatened use of force, "[a] sexual offense that is punishable as a felony," certain violations of NRS chapter 484C that are punishable as a felony, and category A or B felonies would have statutory credits applied to their parole eligibility. *See* 2007 Nev. Stat., ch. 525, § 5, at 3177. At the same time, NRS 209.4465(7) was amended to begin, "Except as otherwise provided in subsection 8." *Id.* The exclusions in NRS 209.4465(8) were thus clearly intended to abrogate any contrary language in NRS 209.4465(7). The amendments to NRS 209.4465 became effective on July 1, 2007. 2007 Nev. Stat., ch. 525, § 22, at 3196.

The version of NRS 209.4465 in effect at the time an offender committed his or her crime is the one that governs application of credits toward parole eligibility. *See Weaver v. Graham*, 450 U.S. 24, 31-33 (1981); *Goldsworthy v. Hannifin*, 86 Nev. 252, 255, 468 P.2d 350, 352 (1970); *cf. State v. Second Judicial Dist. Court (Pullin)*, 124 Nev. 564, 567, 188 P.3d 1079, 1081 (2008) ("[T]he proper penalty is the penalty in effect at the time of the commission of the offense . . . ."). For crimes committed after July 17, 1997, but before July 1, 2007, whether credits apply to an offender's minimum sentence depends on the verbiage in the sentencing statute. For crimes committed on or after July 1, 2007, the applicability also depends on whether the offender's convictions fall within the offenses identified in NRS 209.4465(8)(a)-(d). Thus, NRS 209.4465 has the potential to apply disparately to offenders convicted of similar offenses based on the date the offenses were committed. For example, category B felonies typically require a minimum term of not less than a set number of years but do not mention

parole eligibility. *See, e.g.,* NRS 193.130(2)(b) ("A category B felony is a felony for which the minimum term of imprisonment in the state prison that may be imposed is not less than 1 year and the maximum term of imprisonment that may be imposed is not more than 20 years . . . ."); NRS 200.481(2)(e)(1) (stating battery with the use of a deadly weapon is punishable as "a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 10 years"). Thus, a person who committed battery with the use of a deadly weapon on June 30, 2007, could have statutory credits applied to his parole eligibility, while a person who committed the same crime on July 1, 2007, could not.

However, legislation that has the potential to treat offenders disparately does not necessarily run afoul of the Equal Protection Clauses. *See New Orleans v. Dukes,* 427 U.S. 297, 304 n.5 (1976) ("Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." (quotation marks omitted)). Indeed, we presume the challenged legislation is constitutional. *Allen v. State,* 100 Nev. 130, 135, 676 P.2d 792, 795 (1984).

Equal-protection analysis involves a two-part inquiry. This court first establishes what level of scrutiny the legislation receives, and then it examines the legislation under the appropriate level of scrutiny. *Gaines,* 116 Nev. at 371, 998 P.2d at 173. Legislation that leads to disparate treatment but that does not involve a suspect class or impinge upon a fundamental right is reviewed under the rational basis standard of review. *Id.* Under this standard, this court will uphold the legislation so long as "the challenged classification is rationally related to a legitimate governmental interest." *Id.*

The application of statutory credits is subject only to rational basis review, *see McGinnis v. Royster*, 410 U.S. 263, 270 (1973), because "inmates are not a suspect class," *Peck v. Zipf*, 133 Nev. ___, ___, 407 P.3d 775, 782 (2017), and as "there is no fundamental constitutional right to parole," *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999), there can be no fundamental constitutional right to receive credit to accelerate a parole eligibility date, *see Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Thus, disparate treatment under NRS 209.4465 will violate the Equal Protection Clauses only if the legislation "is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Allen*, 100 Nev. at 136, 676 P.2d at 796 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

When it comes to sentencing, it seems virtually axiomatic that offenders may be punished differently for the same crime committed on different dates. As one court aptly observed, "Legislation must, of necessity, take effect on some specific date," and thus may "creat[e] two classes of offenders distinguishable by only the date of offense, conviction, plea, or sentencing." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 504 (6th Cir. 2007). And the United States Court of Appeals for the Ninth Circuit specifically held that "[t]here is no denial of equal protection in having persons sentenced under one system for crimes committed before [a specific date] and another class of prisoners sentenced under a different system." *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991) (quoting *Foster v. Wash. State Bd. of Prison Terms & Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989)); *see also Leigh v. United States*, 586 F.2d 121, 123 (9th Cir. 1978)

(denying an equal-protection claim challenging different laws that were in effect depending on when a defendant's case went to trial). Other courts have reached a similar conclusion. *See, e.g., Doe*, 490 F.3d at 504-05; *Huggins v. Isenbarger*, 798 F.2d 203, 206-07 (7th Cir. 1986); *Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983); *State v. Nguyen*, 912 P.2d 1380, 1382-83 (Ariz. Ct. App. 1996); *Robinson v. State*, 584 A.2d 1203, 1206 (Del. 1990); *Bergee v. S.D. Bd. of Pardons & Paroles*, 608 N.W.2d 636, 644 (S.D. 2000). Discrepancies in the time offenders must serve, even where the offenders committed similar crimes, is inescapable whenever a legislature increases or reduces sentences. *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011).

The 2007 amendments to NRS 209.4465 refined the parole-eligibility calculation. *See Williams*, 133 Nev. at ___ n.6, 402 P.3d at 1264 n.6 (noting the 2007 change "set additional limitations on the application of credits to eligibility for parole"). And establishing the time an offender must spend in prison is a rational governmental purpose, *cf. McQueary*, 924 F.2d at 834 ("Improvement in sentencing is [a] rational governmental purpose." (quotation marks omitted)). The 2007 amendments to NRS 209.4465 were thus rationally related to a legitimate governmental interest. Accordingly, any disparate treatment resulting from the date a crime was committed does not deny offenders equal protection of the law under the United States and Nevada Constitutions.

## CONCLUSION

The plain language of NRS 209.4465(2) requiring "diligence in labor" means an offender must actually work to earn labor credits. And the disparate application of statutory credits to parole eligibility based on when an offender committed an offense is rationally related to a legitimate governmental interest and thus does not offend the Equal Protection

Court of Appeals
of
Nevada

(O) 1947B

Clauses of the United States and Nevada Constitutions. For these reasons, we conclude the district court did not err in dismissing Vickers' petition, and we affirm.[2]

_____, C.J.
Silver

_____, J.
Tao

_____, J.
Gibbons

---

[2]Vickers also claims he was entitled to credit for time served on probation. We conclude the district court did not err by denying this claim. *See* 2009 Nev. Stat., ch. 447, § 5, at 2513-14; NRS 176A.635(1); *Webster v. State*, 109 Nev. 1084, 1085, 864 P.2d 294, 295 (1993).

We have also considered Vickers' claim that he was entitled to the appointment of postconviction counsel. We conclude the district court did not abuse its discretion in declining to appoint counsel. *See* NRS 34.750(1) (the appointment of counsel is discretionary); *Renteria-Novoa v. State*, 133 Nev. ___, ___, 391 P.3d 760, 760-61 (2017).